**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES, | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | **NO. 14-548** |
| | : | |
| BRIAN HARTLINE and | : | |
| BARRY BEKKEDAM, | : | |
| Defendants. | : | |

Jones, J.                                                              September 16, 2016

## MEMORANDUM

Now pending before the Court is Defendant Brian Hartline's Motion for Acquittal Pursuant to Fed. R. Crim. P. 29, (Dkt No. 171 [hereinafter "Hartline Acq."]), Defendant Barry Bekkedam's Motion for Acquittal Pursuant to Fed. R. Crim. P. 29, (Dkt No. 172 [hereinafter "Bekkedam Acq."]), Government's Response to Motions for Acquittal, (Dkt No. 174 [hereinafter "Resp. to Acq."], Defendant Bekkedam's Reply in Support of Acquittal, (Dkt No. 175 [hereinafter "Bekkedam Acq. Reply"]), and Defendant Hartline's Memorandum in Further Support of Motion for Acquittal, (Dkt No. 176 [hereinafter "Hartline Acq. Reply"]), Defendant Bekkedam's Supplemental Memorandum for Motion of Acquittal, (Dkt No. 191 [hereinafter "Bekkedam's Acq. Supp."]), Defendant Hartline's Memorandum of Law in Further Support of Motion for Acquittal, (Dkt No. 207 [hereinafter "Hartline's Acq. Supp."]), Defendant Hartline's Motion for a New Trial Pursuant to Fed. R. Crim. P. 33, (Dkt No. 230 [hereinafter "Hartline's New Trial"]), Defendant Bekkedam's Motion for a New Trial, (Dkt No. 231 [hereinafter "Bekkedam's New Trial"]), Government's Response to Defendants' Motions for Acquittal and New Trials, (Dkt No. 242 [hereinafter "Govt. Resp."]), Defendant Bekkedam's Reply to Response, (Dkt No. 244 [hereinafter "Bekkedam's Reply to Resp."]), Defendant's Hartline's Reply to Response, (Dkt No. 255 [hereinafter "Hartline's Reply to Resp."]), and oral argument on July 14, 2016.

## I.      Procedural and Factual Background

On October 2, 2014, a grand jury charged Brian Hartline and Barry Bekkedam with: Count I – Conspiracy to defraud the United States in violation of 18 U.S.C. § 371, Count II – Major fraud on the United States through the Troubled Asset Relief Program in violation of 18

U.S.C. § 1031, Counts III and IV – False statements to the federal government in violation of 18 U.S.C. § 1001, and Count VII – Bank fraud in violation of 18 U.S.C. § 1344. Barry Bekkedam alone was charged in Counts V and VI – Wire fraud in violation of 18 U.S.C. § 1343.

On July 20, 2015, Defendant Brian Hartline filed a Motion to Dismiss the Indictment, (Dkt No. 34), a Motion to Sever, (Dkt No. 35), a Motion for Release of Brady Materials and Rough Notes, (Dkt No. 36), and a Motion for Joinder to Pre-Trial Motions Filed by Barry Bekkedam, (Dkt No. 37). That same day, Defendant Barry Bekkedam filed a Motion to Join in All Applicable Filings of Pre-Trial Motions by Co-Defendant Brian Hartline, (Dkt No. 38), a Motion for Bill of Particulars, (Dkt No. 39), a Motion to Dismiss the Indictment Due to Government Misconduct or, In the Alternative, for a Kastigar Hearing, (Dkt No. 40), a Motion to Dismiss Each Count of the Indictment for Legal Insufficiency, or, In the Alternative, To Strike Surplusage From the Indictment, (Dkt No. 41). Pursuant to the Court's Policies and Procedures, the Motions to join in one another's filings were denied on July 21, 2015, (Dkt No. 42). On August 13, 2015, Defendant Hartline filed a Supplemental Motion to Dismiss the Indictment, (Dkt No. 48), followed by a Second Supplemental Motion to Dismiss the Indictment on October 22, 2015, (Dkt No. 89). On August 13, 2015, Defendant Bekkedam likewise filed an additional Motion to Dismiss the Indictment and, In the Alternative, for Grand Jury Legal Instructions, (Dkt No. 46), followed by a Joint Supplemental Motion to Dismiss Counts One through Four of the Indictment Based on Post-Indictment Revelations by Department of Treasury, (Dkt No. 75), on October 9, 2015. In an omnibus Order issued on November 4, 2015, the Court denied each of the foregoing motions.

Before trial, Defendant Brian Hartline filed a Motion in Limine to Exclude the Use of Certain Deposition Testimony, (Dkt No. 78), a Motion in Limine to Exclude Evidence of Certain Prior Transactions, (Dkt No. 103), a Motion to Produce Rough Notes, (Dkt No. 112), and a Joint Motion to Exclude Testimony of Four Government Witnesses for Failure to Identify and Preserve Jencks and Possible Brady Evidence, and for Production or in camera Review of All Remaining Rough Notes, (Dkt No. 139). Defendant Barry Bekkedam filed a Motion for Release of Brady Materials and Rough Notes, (Dkt No. 47), Motion to Exclude Certain Documents and to Preclude Certain Witnesses, (Dkt No. 88), a Motion in Limine, (Dkt No. 93), and a Second Motion in Limine, (Dkt No. 132). The Government filed a Motion to Quash Subpoena Duces Tecum (Dkt No. 90), a Motion in Limine to Exclude, (Dkt No. 91), a Motion in Limine to

Preclude Improper Evidence and Argument Regarding Financial Regulators and Improper Use of Witness Interview Reports, (Dkt No. 131), and a Motion in Opposition of Defendant Bekkedam's Propose Use of Prior Convictions of Two Government Witnesses, (Dkt No. 154). On March 24, 2016, the Court held oral argument and resolved any outstanding disagreements amongst the parties on the use of evidence, with the exception of the testimony of Larry Rovin.[1]

On March 29, 2016, the trial began with the selection of a jury through the use of a written questionnaire followed by individual questioning by the Court. At the conclusion of the Government's case-in-chief, on April 14, 2016, both Defendants filed Motions for Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29. Although the Court expressed serious concerns about the proof offered, it reserved ruling in order to permit through review of the transcripts and in order to avoid the risk of double-jeopardy in the event that the Court remove the issue from the jury prematurely. Despite those concerns, the Court was compelled to strike Count VI before permitting the case to proceed to the jury in light of the Government's inability to produce any email pertaining to the state alleged from the date stated in the indictment. In addition, the Court's concerns about holding Mr. Bekkedam accountable for an email sent by a Ballamor employee, which was not sufficiently tied to the Defendant himself, were allayed when the jury found Defendant Bekkedam NOT GUILTY on Count V. Therefore, the two counts about which the Court harbored serious concerns about the proof offered are no longer at issue. Both Defendants were also found NOT GUILTY on Count VII. As a result, Defendant Hartline and Defendant Bekkedam were each found guilty on only the first four counts: Counts I, II, III, and IV. Both Defendants now challenge their convictions as to each count pursuant to Federal Rule of Criminal Procedure 29. In addition, both Defendants request new trials pursuant to Federal Rule of Criminal Procedure 33.

---

[1] A great deal of pre-trial litigation centered around the potential testimony of Defendant Bekkedam's attorney, Larry Rovin, including whether the Government acted unethically in securing his statement and whether the testimony ought to be excluded as privileged or confidential. In light of the Government's insistence that it need not rely on the crime-fraud exception to attorney-client privilege, the Court was troubled by the potential use of the testimony. This was further compounded by the risk of Mr. Rovin invoking the Fifth Amendment when outside the bounds of his immunity agreement and the involvement of Mr. Rovin's personal attorney, Ann Flannery. Due to the web of complexity surrounding Mr. Rovin's testimony, the Court reserved ruling on the metes and bounds of Mr. Rovin's testimony until the trial began to take shape and Mr. Rovin was called. Ultimately, however, Mr. Rovin was not called as a Government witness and any concerns about the sanctity of this testimony did not come to fruition.

## II.   Legal Standard for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 directs that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29. Because the Court reserved ruling on the Motion made at the conclusion of the Government's case-in-chief, the Court "must decide the motion on the basis of the evidence at the time the ruling was reserved." FED. R. CRIM. P. 29. In ruling on a motion for judgment of acquittal, the Court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)). As a result, a finding of insufficiency should be "confined to cases where the prosecution's failure is clear." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (internal citations omitted). The Court must be vigilant "not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *Id.*

## III.   Discussion as to Motions for Judgment of Acquittal

The facts of the case are, in large part, not in dispute. Brian Hartline was the CEO of NOVA Bank and Barry Bekkedam, a financial advisor to wealthy clientele, was initially involved directly with the bank, then had no official role, and then was retained as an outside consultant to raise funds. Defendant Bekkedam encouraged several of his wealthy clients, George Levin, Anthony Bonomo, and Charles Gallub, to invest in NOVA Financial Holdings, the parent company of NOVA Bank. But the primary investor, George Levin, would not invest his own money and failed to secure a loan from an outside bank. (Govt. Resp. at 8.) Therefore, the funding for the investments in NOVA Financial Holdings was to come from loans provided by NOVA Bank. (Bekkedam's Acq. Supp. at 3-4; Govt. Resp. at 9.) As a result, NOVA Bank issued a $5 million loan to George Levin and then, two hours after the loan was issued, George Levin invested in NOVA Financial Holdings, NOVA Bank's parent company. (Govt. Resp. at 9 (citing [Tr. 1343-1344 (Patterson, 4/7, 111-12)].) Based on the investment by George Levin, Defendant Hartline informed the FDIC Regulator, Lisa Koch, that NOVA had raised $5 million in capital. (Tr. 308 (Koch, 3/30, 101:15-19)). Defendant Hartline sent an email congratulating Defendant Bekkedam on the $5 million of capital raised. (Ex. 50.)

The dispute throughout trial and both Defendants' Rule 29 Motions centers almost entirely on the meaning and effect of the term "capital." Defendants maintain that a financial investment in NOVA Financial Holdings, NOVA Bank's parent company, made by an individual who received a loan from NOVA Bank, still counts as capital. And, even if it should not count as a capital, Defendants lacked knowledge of the falsity of the term capital and therefore lacked specific intent to defraud. This was a theory that Defendants presented to the jury, raising repeatedly the argument that an obscure Generally Accepted Accounting Principle, EITF-85-1, governs whether this is capital and that (1) the rule itself is discretionary, therefore it does not preclude the transactions from counting as capital and (2) even if the rule does preclude the transactions from being capital, Defendants had never heard of such a rule before representing the investments as a capital. Finally, Defendants argued to the jury that NOVA Bank was not going to receive TARP funds regardless of the representations regarding capital and therefore the statements were immaterial. In finding Defendants guilty, the jury necessarily rejected these defenses. Defendants now ask the Court to reconsider this verdict.

A. Count I: Conspiracy to Defraud the United States

Count I charges that "Defendants Brian Hartline and Barry Bekkedam devised a scheme to obtain over $13 million in funds from the United States, by making false representations about the assets of NOVA Financial Holdings, Inc., and by arranging bogus financial transactions." (In. ¶ 13.) Conspiracy pursuant to 18 U.S.C. § 371 requires proof of four elements: (1) That two or more persons agreed to defraud the United States, which means they agreed to cheat the United States Government or any of its agencies out of money or property or to obstruct or interfere with one of the United States government's lawful functions by deceit, craft, trickery, or dishonest means; (2) That each defendant was a party to or member of that agreement; (3) That each defendant joined the agreement or conspiracy knowing of its objective to defraud the United States and intending to join together with at least one other conspirator to achieve that objective, which means that each defendant shared with the other a unity of purpose with and the intent to achieve a common goal or objective to defraud the United States; (4) That at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objective of the agreement. Third Circuit Model Jury Instruction 6.18.371B.

     *i.    First Element: Agreement*

"The government must prove beyond a reasonable doubt that two or more persons knowingly and intentionally arrived at a mutual understanding or agreement, either spoken or unspoken, to work together to achieve the overall objective of the conspiracy to defraud the United States." Third Circuit Model Criminal Jury Instruction 6.18.371C. "What the government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective." *Id.* There is no requirement that the persons agree to a specific strategy or means of achieving that goal, only that a common goal exists. The jury "may find the existence of a conspiracy based on reasonable inferences drawn from the actions and statements of the alleged members of the conspiracy, from the circumstances surrounding the scheme, and from evidence of related facts and circumstances which prove that the activities of the participants in a criminal venture could not have been carried out except as the result of a preconceived agreement, scheme, or understanding." *Id.*

    Defendant Bekkedam argues that "the Government has tried to tie a number of individual events together to create the appearance of an underlying agreement to defraud, but the events that transpired occurred without the reliance on such an agreement or even mutual understanding." (Bekkedam's Acq. Supp. at 12.) But this is exactly the type of evidence on which the Government is permitted to rely – circumstantial evidence that is based on reasonable inferences drawn from actions, statements, circumstances, and from evidence of related facts and circumstances which prove that some preconceived agreement or understanding must have existed. Furthermore, the Court cannot disturb the jury's verdict based on "the 'contention that the evidence also permits a less sinister conclusion'" than criminal conspiracy. *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002) (quoting *United States v. Dent*, 149 F.3d 180, 188 (3d Cir. 1998)). The Court "must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Dent*, 149 F.3d at 187). Considering the circumstances surrounding the arrangement of the loans from Defendant Hartline's NOVA Bank to Defendant Bekkedam's clients, which then led to investments in NOVA Financial Holdings; Defendant Bekkedam's consultancy agreement with NOVA Bank; Defendant Hartline's email congratulating Defendant Bekkedam on raising the capital, statements made to the FDIC

regulator, statements on the loan documents, and emails between Defendant Bekkedam, George Levin and George Levin's financial advisor regarding the arrangement of the loans,[2] when viewed in the light most favorable to the prosecution, could lead any rational trier of fact to conclude that Defendant Hartline and Defendant Bekkedam had an agreement to defraud the United States.

To the extent that Defendant Bekkedam argues that he was not sufficiently, individually involved in any scheme to be personally responsible, (Bekkedam Acq. Supp. 10), this argument is belied by Exhibits 106 and 114. These emails from Defendant Bekkedam clearly permit a rational juror to find that Bekkedam was informed about the communications with regulators, (Ex. 114), and that Bekkedam is "manag[ing] Brian who is managing his regulators." (Ex. 106.) Based on these emails, in conjunction with the totality of facts and circumstances viewed in the light most favorable to the Government, any rational trier of fact could conclude that Defendant Bekkedam's was individually and personally involved in the conspiracy. Therefore, the Court will not overturn the jury's verdict based on a failure to prove an agreement.[3]

Defendant Hartline challenges the agreement prong of conspiracy based on his contentions that: the Government failed to prove where, when, or how, the Defendants came to the agreement; such an agreement would require coordination with George Levin, Anthony Bonomo, and Charles Gallub as well; and NOVA's loan committee knew of the true purpose of the loan for George Levin. First, the Government is not required to prove where, when, or how, as Defendant Hartline suggests is required. The Government "must prove beyond a reasonable doubt that [] two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective." Third Circuit Model Jury Instruction 6.18.371C. As long as the facts and circumstances presented, when viewed in the light most favorable to the prosecution, are sufficient for any reasonable juror to find that the Defendants in some way arrived at some type of agreement, the jury's verdict will not be disturbed. *United States v. Gibbs*, 190 F.3d 188, 197

---

[2] Mr. Levin testified that Defendant Bekkedam arranged for the loan and subsequent investment and that Mr. Levin did not necessarily "care" about the investment, but agreed to the investment as a "favor" to Defendant Bekkedam. [Tr. 934-35 (Levin, 4/5, 116-17)]; Exhibit 74.

[3] Defendant Bekkedam also argues that "no agreement to defraud TARP existed in May 2009, as alleged in the indictment, when the official contingency did not exist until August 25, 2009, after Levin's investment on June 30th." (Bekkedam. Acq. Supp. at 13.) Because the indictment clearly states that the applicable time period is "[b]etween in or about May 2009 and in or about January 2010," Defendant Bekkedam's argument regarding timing is unfounded. (In. ¶ 12.)

(3d Cir. 1999) ("The government need not prove that each defendant knew all of the conspiracy's details, goals, or other participants.").

Second, Defendant Hartline's argument that a conspiracy would necessarily require the participation of the individuals facilitating the loans in the conspiracy is unfounded. Simply because the individuals agreed to borrow money from NOVA Bank and invest in NOVA Financial Holdings does not mean that the individuals shared in the purpose of securing the investments for the purposes of meeting a capital contingency communicated by regulators. For instance, Mr. Levin stated in an email that he did not care about the investment at all, but that it was just a favor to Barry Bekkedam. (Ex. 74.) This type of behavior by the individuals investing does not legally prevent the occurrence of a conspiracy. To the extent that Defendant Hartline could, and did, argue that because the individuals were not conspirators it was less likely that a conspiracy existed at all, was for the jury to decide. *See United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002) ("'To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilt.'") (quoting *United States v. Dent*, 149 F.3d 180, 188 (3d Cir. 1998)). Similarly, the fact that the loan committee knew of the purpose behind the loans is for the jury to weigh in deciding whether the totality of the evidence suggests a conspiracy. Simply because not everyone was "in" on the plan does not render the conspiracy legally impossible, nor does it make it impossible for any rational trier of fact to find that the Defendants nonetheless had an agreement between the two of them. *See, e.g., Gibbs*, 190 F.3d at 199-200 (explaining that one who buys drugs is not necessarily part of the conspiracy, yet a conspiracy can still exist amongst suppliers and distributors). Because, considering all of the facts and circumstances, it is possible for any rational trier of fact to find a conspiracy existed, as discussed above, the Court will not overturn the jury's verdict based on a failure to prove an agreement.

    ii.    *Second and Third Elements: Each Defendant was a Party or Member Who Knowingly and Intentionally Joined the Conspiracy*

The government must also prove beyond a reasonable doubt that each Defendant knew the goals or objectives of the agreement or conspiracy and voluntarily joined it during its existence, intending to achieve the common goals or objectives and to work together with the other alleged conspirators toward those goals or objectives. Third Circuit Model Criminal Jury Instructions 6.18.371D.

Defendant Bekkedam argues that "[w]hile the evidence demonstrated that the Defendants had a common goal of raising capital, they did not know at the time that their method of doing so was unlawful or that it could lead to an unlawful result – that is, calculating the loan proceeds as capital and presenting it to the federal regulators as such." (Bekkedam Acq. Supp. at 13.) Therefore, "Bekkedam cannot be found to have the requisite intent to join a conspiracy to either conduct illegal acts or conduct acts for an illegal purpose when he in fact did not know that NOVA Bank's or NOVA Financial's acts – representing loan proceeds as capital – were not legal." (Bekkedam Acq. Supp. at 14.) The Court recognizes that in order for the Government to prove conspiracy under 18 U.S.C. § 371, it is "required to prove at least the degree of criminal intent necessary for the underlying substantive offense." *United States v. Brodie*, 403 F.3d 123, 147 (3d Cir. 2005). In addition, the Government "must prove that the defendant had knowledge of the facts that constitute the offense and of the illicit purpose of the conspiracy." *Id.* at 148. But because this argument is intricately intertwined with the argument as to Count II, the Court will address both together when addressing Count II.

To the extent that the third element is not contingent on the underlying offense, it asks only whether Defendant Bekkedam knew of and intended to join in the agreement to secure investments in NOVA Financial through loans provided by NOVA Bank and then represent to regulators that "capital" had been raised in order to secure TARP Funding. Defendant Bekkedam suggested the idea of NOVA Bank funding the loan to George Levin to have him invest in NOVA Financial, (Ex. 39a), Defendant Bekkedam coordinated with Levin's financial advisor to have the loan disbursed and the investment made, (Ex. 40), and then kept in communication with Defendant Hartline about his ongoing communications with regulators. (Exs. 106 & 114; [Tr. 1057-58 (Musser, 4/6, 51:17-52:1)].) Furthermore, Defendant Bekkedam had specifically told Hilary Musser that he was assisting NOVA Bank in raising capital so that the bank could receive TARP funds. [Tr. 1056 (Musser, 4/6, 50:18-20)]. When viewed in the light most favorable to the Government, these specific pieces of evidence, in conjunction with all the other facts and circumstances presented by the Government, permit any rational trier of fact to find that Defendant Bekkedam knew of the goal to raise capital through the arrangement of loans in an attempt to secure TARP Funds for NOVA Bank and voluntarily joined in soliciting clients for the loans with the intent to carry out that goal. Therefore, the Court will not disturb the jury's verdict as to conspiracy based on this third element.

As to the third element, Defendant Hartline argues only that the conspiracy conviction fails because the underlying offense fails. Therefore, the Court will address this argument with Count II.

### iii.    Fourth Element: Overt Act

"With regard to the fourth element of conspiracy – overt acts – the government must prove beyond a reasonable doubt that during the existence of the conspiracy at least one member of the conspiracy performed at least one of the overt acts described in the indictment, for the purpose of furthering or helping to achieve the objective(s) of the conspiracy." Third Circuit Model Jury Instruction 6.18.371F. The jury "must unanimously agree on the overt act that was committed." *Id.*

Defendant Bekkedam argues that the overt acts alleged were in fact normal steps in the loan process and therefore could not be considered in furtherance of the conspiracy. (Bekkedam Acq. Supp. at 14-15.) Although the overt act must be committed in furtherance of the conspiracy, the act itself can be "as innocent as writing a letter or talking on the telephone[.]" *Comment*, Third Circuit Model Jury Instruction 6.18.371F (citing *United States v. Nelson*, 852 F.2d 706, 713 (3d Cir. 1988)). The overt acts alleged in the indictment involve the arrangement of the loans to Defendant Bekkedam's clients, the subsequent investments in NOVA Financial Holdings, and representations to regulators. (In. at 9-10.) The jury was instructed that "[t]he government must prove beyond a reasonable doubt that at least one member of the conspiracy committed at least one of the overt acts alleged in the indictment and committed it during the time that the conspiracy existed, for the purpose of furthering or helping to achieve the objective(s) of the conspiracy." Third Circuit Model Jury Instructions 6.18.371F. Although each act alleged standing alone could be an innocent act, the acts could also be in furtherance of a scheme to make it appear that NOVA Financial has raised capital when in fact the investments were made by individuals who received loans from NOVA Bank, which, based on the jury's finding as to Count II, Defendant's knew should not count as capital. Therefore, because any rational juror could find that an overt act was committed during the conspiracy for the purpose of furthering or helping to achieve the objective of the conspiracy when the evidence is viewed in the light most favorable to the Government, the Court will not disturb the jury's verdict.

In addition, Defendant Bekkedam argues that he was not personally involved in any of the overt acts and had no "active participation in any purported conspiracy." (Bekkedam Acq. Supp.

at 15.) However, the overt act can be committed by *any* member of the conspiracy. *United States v. Kapp*, 781 F.2d 1008, 1012 (3d Cir. 1986). Therefore, Defendant Bekkedam's argument that he was not an active participant is unavailing.

Defendant Hartline argues that, without an agreement to defraud, there can be no overt acts in furtherance of a conspiracy. Because this argument is entirely contingent on finding that the first element was not met, Defendant Hartline's argument fails for the same reasons discussed above.

Based on the foregoing, the Court will not disturb the jury's finding of guilt as to Count I.

### B.  Count II: Major Fraud Against the United States

Count II charges that "[b]etween in or about May 2009 and in or about December 2009, in the Eastern District of Pennsylvania and elsewhere, defendants BRIAN HARTLINE, and BARRY BEKKEDAM knowingly executed, and attempted to execute, and aided and abetted the execution of, a scheme with the intent to defraud the United States, and to obtain money or property by means of false pretenses, representations, or promises, in connection with a grant, contract, subcontract, subsidy, loan, guarantee, and other form of federal assistance, that is an attempt to obtain $13,472,000 from the Troubled Asset Relief Program submitted by NOVA Bank ("NOVA"), which attempt included false representations of infusions of capital when, in fact, defendants BRIAN HARTLINE and BARRY BEKKEDAM, and others participated in a scheme to use NOVA's own money to fraudulently give the appearance of outside investment. In violation of Title 18, United States Code, Sections 1031 and 2." (In. at 11.) Although there are not Third Circuit Model Jury Instructions for 18 U.S.C. § 1031, the parties agreed on instructions detailing the four elements necessary to prove major fraud as follows: "(1) There was a scheme to defraud the United States or to obtain money or property by means of materially false or fraudulent pretenses, representations, or promises, as charged in the indictment;  (2) This scheme took place in a form of Federal assistance, including the Troubled Asset Relief Program (or "TARP"), an economic stimulus, recovery, or rescue plan provided by the government, or through the Government's purchase of a troubled asset as defined in the Emergency Economic Stabilization Act of 2008; (3) The defendant executed or attempted to execute this scheme (as set forth in paragraphs 1 and 2 above knowingly and with specific intent to defraud; and (4) The

value of such form of Federal assistance, or any constituent part thereof, was at least one million dollars ($1,000,000)." (Jointly Submitted Jury Instructions Apr. 20, 2016.)

       i.    *First Element: Scheme to Defraud by Means of Materially False or Fraudulent Representations*

Defendants argue that the Government failed to prove that the statements were "material" and therefore the convictions must be overturned. A statement is material if it has "a natural tendency to influence, or [be] capable of influencing, the decisionmaking body to which it is addressed." *United States v. McBane*, 433 F.3d 344, 350 (3d Cir. 2005) (quoting *United States v. Gaudin*, 515 U.S. 506, 512 (1995)). Defendants challenge the proof as to this element because the Government did not produce any individual from the committee that constituted the final decision maker on the disbursement of TARP funds. In order for a statement to be of the type capable of influencing the decisionmaker, however, the Government need not necessarily produce the decisionmaker itself. Here, at least four government employees involved in the TARP process testified that it would be important to know that capital raised by a holding company was derived from loans dispersed by the bank. (Koch, 3/30, 103, 111-12, 140-42, 159-60; Hunter, 4/8, 34; Quill, 3/30, 39:22-25, 40:1-9, 42:1-16; Bertsch, 3/29, 94:1-23.) In addition, these regulators testified that the purpose of requiring the holding company to raise capital is to ensure it has a "cushion" against losses and explained that the holding company does not have that same cushion if the investment came from a loan made by its bank. (Bertsch, 3/29, 92.) Furthermore, raising capital was specifically a contingency of receiving TARP funds. (Ex. 30.) When viewed in the light most favorable to the Government, the testimony by multiple government employees regarding the importance of the information, the logic supporting the importance of the information, and the fact that the agreement to provide TARP funds was entirely contingent on raising capital is sufficient evidence for a reasonable jury to find beyond a reasonable doubt that the statements regarding capital were capable of or tended to influence the decisionmaking body. There is no requirement that the decisonmaker actually believed and relied upon the statement, only that the statement "was of a type that one would normally predict would influence the given decisionmaking body." *McBane*, 433 F.3d at 351. Therefore, Defendants arguments demanding such evidence are unfounded.

Defendant Bekkedam further argues that he never made any statement that was presented to the Government in seeking TARP funds, nor did he aid or abet in any of Defendant Hartline's

12

statements. Defendant Bekkedam does however admit that he sent a letter, to which a copy was sent to Defendant Hartline, stating that a potential investor was prepared in invest $15,000,000 in NOVA Financial. (Bekkedam Acq. Supp. 18-19, n.67; Ex. 28.) In addition, Defendant Bekkedam coordinated the plan for the Levin loan and subsequent investment with Defendant Hartline. (Ex. 39.) Defendant Hartline then made representations to the Government regarding the capital contingency. Furthermore, Defendant Bekkedam even stated that he was "manag[ing] Brian who is managing his regulators." (Ex. 106.) In that same email, Defendant Bekkedam stated that "the regulators are killing Brian." (Ex. 106.) For Defendant Bekkedam to now argue that he had no role in what was said to the regulators and was wholly ignorant throughout the whole process is plainly disingenuous. In light of the above, even if Defendant Bekkedam were not responsible as a co-conspirator under *Pinkerton*, a reasonable jury could find beyond a reasonable doubt that Defendant Bekkedam aided and abetted Defendant Hartline in making statements to the regulators.[4]

Defendant Hartline further argues that the Government failed to prove this element because it did not prove that the statements were "objectively false." Defendant Hartline relies on *United States v. Castro*, 704 F.3d 125, 139 for the proposition that the statement must be objectively false in order to support a conviction. In *Castro*, the Third Circuit reversed a conviction where the Defendant believed the statement underlying the conviction to be false, but in fact the statement was literally true. The Third Circuit relied on the Supreme Court's interpretation of the perjury statute, 18 U.S.C. § 1621, in *Bronston v. United States*, 409 U.S. 352 (1973), to find that the government must prove that the statement was untrue, not merely

---

[4] Defendant Bekkedam argues in his Motion for a New Trial that because the instructions as to Count Two did include aiding and abetting liability, he could not be convicted on Count Two. (Bekkedam New Trial at 45.) The instructions as to Count Two, however, stated that:

> The government may prove a defendant guilty of these offenses by proving that the defendant personally committed them.  The government may also prove a defendant guilty of these offenses based on the legal rule that each member of a conspiracy is responsible for crimes and other acts committed by the other members, as long as those crimes and acts were committed to help further or achieve the objective of the conspiracy and were reasonably foreseeable to that defendant as a necessary or natural consequence of the agreement.  In other words, under certain circumstances the act of one conspirator may be treated as the act of all.  This means that all the conspirators may be convicted of a crime committed by any one or more of them, even though they did not all personally participate in that crime themselves.

Therefore, even without aiding and abetting liability as to Count Two, the jury could convict Defendant Bekkedam.

unresponsive or a literal truth nonetheless intended to deceive. Defendant Hartline, however, does not explain the applicability of *Castro* to a conviction under 18 U.S.C. § 1031. While the entire basis of a conviction under § 1001 or § 1621 is a false statement, §1031 encompasses the broader crime of fraud generally. As a result, while §§ 1001 and 1621 are limited to statements and representations, § 1031 extends to the use of any type of fraud or "false or fraudulent pretenses" as well. The distinction can be seen in the example of an individual writing a bad check; while the bad check can be used to perpetuate a fraud, the check itself cannot be a false statement. Therefore, while an individual engaged in check kiting cannot be prosecuted under a false statement statute, the individual could nonetheless be prosecuted under a state fraud statute. *See Williams v. United States*, 458 U.S. 279 (1982).

Because the criminalization of fraud is broader than the criminalization of false statements, as evidenced by the language of the statutes, the Court is not convinced that the same rationale behind *Castro* is fully applicable to § 1031. Therefore, Defendant Hartline's demand for a specific, objectively false statement is not supported by the language of §1031. In accordance with the language of the statute, the Government need only prove that Defendants knowingly executed or attempted to execute a scheme or artifice with the intent either to defraud the United States or to obtain money by means of false or fraudulent pretenses, representations, or promises. 18 U.S.C. § 1031. Therefore, Defendant Hartline's argument regarding the failure to produce a specific statement and prove its objective falsity is unfounded in the statute.

     *ii.*    *Second Element: Scheme Took Place in a Form of Federal Assistance*

Defendants do not contest this element.

     *iii.*    *Third Element: Specific Intent to Defraud*

Although the parties agree that "specific intent" is an element of fraud, the parties disagree as to what exactly "specific intent" requires. While Defendants argue that "specific intent" requires "willfulness," the Government argues that "specific intent" requires only that each defendant acted "knowingly with the purpose to deceive or to cheat." Unlike 18 U.S.C. §1001, the statute at issue in Count II, 18 U.S.C. §1031, does not use the term "willfully." In addition to the exclusion of any willfulness requirement from the plain language of the statute, the Third Circuit has not interpreted "specific intent" on its own to require willfulness. Furthermore, even if specific intent did require willfulness, it would not require proof that the

defendant had actual knowledge of the law in question or specific intent to violate that law.[5] *United States v. Shvets*, 631 F. App'x 91, 96 (3d Cir. 2015) (interpreting "willfulness" in the context of fraud charged pursuant to Section 1347), *cert. denied*, 136 S. Ct. 1526, 194 L. Ed. 2d 613 (2016). Regardless, based on the plain language of the statute, especially read in context with other fraud statutes that specifically require willfulness, the Court did not instruct the jury on willfulness. Therefore, in reviewing whether any rational trier of fact could have found Defendants guilty beyond a reasonable doubt, the Court applies the standard which the jury was instructed to follow. Because the Court will apply the same standard it did at trial, Defendants' arguments regarding willfulness are unavailing. To the extent Defendants argue that the Government failed to prove specific intent, even without a willfulness requirement, the Court will address that now.

Defendant Bekkedam argues that the Government failed to prove "specific intent" and therefore the conviction must be overturned. Defendant Bekkedam argues that he did not have specific intent because: he did not act with conscious disregard for the law, no law bars him from raising capital for a bank; he was completely removed from the decision to count the investments from the loans as capital; and he sought no personal financial gain. (Bekkedam Acq. Supp. at 17-18.) First, the Government need not prove that Defendant Bekkedam acted with conscious disregard for the law. When the statute requires that the violation be "willful," then a defendant must have at least "general knowledge of the law which forbade his actions and acted with specific intent to circumvent that law." *United States v. Brodie*, 403 F.3d 123, 147 (3d Cir. 2005). Without a willfulness requirement, and even in certain cases where there is a willfulness requirement, however, the default rule is that ignorance of the law is no excuse. *Bryan v. United States*, 524 U.S. 184, 196 (1998). Although knowledge of the law itself is not required, in order to avoid criminalizing apparently innocent activity, Defendants must have known generally that the conduct was unlawful. *Id.* The Court instructed the jury that the government must prove beyond a reasonable doubt that each defendant acted "knowingly and with the intention or the purpose to deceive or cheat." (Jointly Proposed Jury Instructions, Count II, Third Element.) Because it is plainly unlawful to act knowingly with the intent to deceive or cheat the Government, a finding of guilt as to Count II necessarily includes a finding that Defendants

---

[5] This is to say, even if the jury had been instructed on willfulness, because such an instruction would have been in accord with *Shvets*, such an instruction would have been unlikely to affect the verdict.

generally knew their conduct was unlawful. Therefore, Defendant Bekkedam's argument that he did not act with conscious disregard for the law is unavailing.

Defendant Bekkedam's argument that no reasonable jury could find that that Defendant Bekkedam engaged in a scheme to defraud TARP beyond a reasonable doubt is unavailing. The Court must view all evidence in a light most favorable to the Government. *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002). The Court will only disturb a jury's verdict if there was a clear failure by the Prosecution. Defendant Bekkedam repeatedly argues that the Court should disturb the jury's verdict based on his view of the evidence. For example, Defendant Bekkedam argues that he received no financial gain. (Bekkedam Acq. Supp. at 17.) Defendant Bekkedam is able to make this argument because he claims that the $250,000 contract between himself and NOVA Bank is a usual business practice for an individual who raises capital for a bank and is not an indication of any untoward activity. (Bekkedam Acq. Supp. at 17-18, n.63.) Defendant Bekkedam further argues that the timing of the compensation, which was received after the loans were issued and investments made, demonstrates that he was not paid to help secure TARP funds. (Bekkedam Acq. Supp. at 17-19.) But the jury is not required to take the same view of the evidence. Another possible interpretation of the timing of Defendant Bekkedam's compensation is that Defendant Bekkedam was rewarded for securing the investments. This example demonstrates the nature of Defendant Bekkedam's arguments; he is asking the Court to view the evidence in a light that is most favorable to him and usurp the jury verdict. Such a view of the evidence, however, flips the acquittal standard on its head. The Court will not reweigh the evidence. The evidence, when viewed in a light most favorable to the Government, is sufficient for a reasonable jury to find an intent to defraud beyond a reasonable doubt. Therefore, the Court will not disturb the jury's verdict on these grounds.

Defendant Hartline argues that he lacked intent to defraud because he was simply relying on the bank's financial statements, which is appropriate to do, and he had no knowledge that his statements were potentially incorrect at the time. (Hartline's Acq. Supp. at 12-16.) Defendant Hartline first argues that "[a]t all times, and as the basis of any alleged statement, Mr. Hartline relied on the financial statements of NOVA Bank and there is no evidence that Mr. Hartline had reason to question the veracity of the financial statements presented to him by NOVA Bank employees." (Hartline's Acq. Supp. at 12.) As a preliminary issue, however, there was no evidence that the Court can find or recall regarding Defendant Hartline's reliance on NOVA

Bank's financial statements when making all statements to federal agents. Defendant Hartline does not provide any citations to transcripts or exhibits to demonstrate his reliance on financial statements, nor did Defendant Hartline testify to offer such information firsthand. Furthermore, even if this evidence was presented to a certain degree, the jury is entitled to decide that in light of all the evidence it is merely an excuse. This Court must view the evidence in the light most favorable to the Government and, when it does so, the lack of evidence regarding Defendant Hartline's innocent reliance on financial statements and the evidence of Defendant Hartline's subsequent concealment of the source of the investment precludes this Court from overturning the jury's verdict on these bases.

Defendant Hartline then argues that there was no evidence that he was aware that his statements were incorrect until May 2010. Defendant Hartline asserts that "[t]he only basis for the requisite knowledge that the government has introduced is the existence of the accounting guidance, EITF 85-1." This argument, however, ignores that the Government relied far more heavily (perhaps completely) on Defendant Hartline's words and actions rather than on the accounting principle. Essentially, the Government relied on Defendant Hartline's emails, forms, and the process by which the loan was granted in order to demonstrate that Defendant Hartline knew he what he was doing was wrong and that he tried to cover it up. This makes more sense considering that EITF 85-1 involves the application of discretion in a manner that makes it nearly impossible to determine beyond a reasonable doubt whether or not it applies, whereas Defendant Hartline's conduct can be relied upon to show that he knew the transactions were not above board. Therefore, even without any reference to EITF 85-1, when the evidence is viewed in the light most favorable to the Government, a reasonable jury could find beyond a reasonable doubt that Defendant Hartline's conduct demonstrated his knowledge of wrongfulness. This holds true even if Defendant Hartline was wholly unaware of EITF 85-1 or in good faith believed it did not apply, because Defendant Hartline could know that his conduct was generally unlawful in that it would deceive the Government, regardless of whether a specific principle forbade the conduct.  (Hartline's Acq. Supp. at 15.) Therefore, because the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that Defendant Hartline knew that loaning the money from the bank for the investments in the holding company would deceive the Government, the Court will not overturn the verdict on this basis.

    *iv.*   *Fourth Element: The Federal Assistance Was at Least One Million Dollars*

Defendants do not contest this element.

C.  <u>Counts III and IV: False Statements to Government Agents</u>

Defendants Bekkedam and Hartline contest their convictions as to Counts III and IV under 18 U.S.C. § 1001. Defendant Bekkedam argues that the Government failed to prove accomplice liability as to each count. Because this Court upheld the conspiracy charge in Count I, Defendant Bekkedam's conviction under Counts III and IV can be upheld under Pinkerton, on which the jury was instructed. Therefore, unless Defendant Bekkedam can demonstrate that the statements were not in furtherance of the conspiracy or that Defendant Hartline, the principal, should not have been convicted, then Defendant Bekkedam's convictions will stand. Defendant Bekkedam does not contest that the statements were made in furtherance of the conspiracy. Therefore, Defendant Bekkedam's conviction is contingent on that of Defendant Hartline.

To sustain a conviction under § 1001, the Government must prove five elements beyond a reasonable doubt: (1) that the defendant made a statement or representation, (2) that the statement or representation was false, (3) that the false statement was made knowingly and willfully, (4) that the statement or misrepresentation was material, and (5) that the statement or misrepresentation was made in a matter within the jurisdiction of the federal government. *United States v. Moyer*, 674 F.3d 192, 213 (3d Cir. 2012). Defendants challenge the Government's proof as to each element.

    *i.*   *First Element: The Defendant Made a Statement or Representation*

Count III charges that, on or about June 30, 2009, "Brian Hartline told, and directed employees of NOVA to tell, the Department of Treasury that NOVA had raised $5 million of new capital through an investment by G.L."[6] Lisa Koch, from the FDIC, testified that on or about June 30, 2009, Brian Hartline told her that NOVA had received $5 million of capital. (Tr. 308.) The Government argues that Government's Exhibit 57 further demonstrates that a

---

[6] Defendant Bekkedam argues that Count Three is duplicative because it says Hartline "told, and directed employees of NOVA to tell…," which then provided two different ways for the jury to convict on Count Three. "Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975). There are not two distinct and separate offenses here as directing the employees of NOVA to take certain action is not an offense in itself under 18 U.S.C. § 1001.

representation was made to the FDIC regarding the receipt of capital because Lisa Koch passed along the information to Chuck Hunter, from Treasury. This is further supported by Government's Exhibit 62, which is an email from Kim Hartline at NOVA to Lisa Koch confirming Mr. Levin's $5 million investment. However, none of the statements or representations described the capital with the adjective "new" preceding it as indicated in the indictment.

Count IV charges that, on or about December 15, 2009, "Brian Hartline told the Department of Treasury that NOVA had raised $10 million of new capital, including a $2.5 million investment by A.B. and a $500,000 investment by C.G." This count refers to Government's Exhibit 140, which is an email from Defendant Hartline to Lisa Koch sent on December 15, 2009. The email states, in part, that "NOVA has meet the contingency requirement by raising over $10.0 million of capital[.]" Attached to the email is a memorandum, including a list of investors who contributed capital. The list includes $2.5 million investment from Anthony Bonomo, (Ex. 140, pg. 10), and a $500,000 investment from Charles Gallub, (Ex. 140, pg. 11). Again, however, none of the statements or representations described the capital with the adjective "new" preceding it as indicated in the indictment.

Both Defendants argue that there is no proof beyond a reasonable doubt that the statement alleged in Count III was made. In addition, both argue that even if there was a statement made about capital, Defendant Hartline never represented to the Government that "new capital" had been raised as alleged in the indictment. (Hartline's Acq. Supp. at 6-8; Bekkedam's Acq. Supp. at 21-23; Hartline's New Trial at 5-6; Bekkedam's New Trial at 76.) The Government argues in its response that the money could not count as capital and therefore the statements were objectively false. (Govt. Resp. at 25.) But the Government does not reconcile the use of "new capital" in the indictment with the fact that the statements plainly omit the adjective. Instead, the Government continues to argue throughout its response that the statements were in regards to "new capital." (Govt. Resp. at 11, 17, 25, 27, 37, 39, 47.) But the Government does not cite to, and the Court cannot recall, a single exhibit or portion of testimony where Defendant Hartline described the capital as "new."

"An indictment is constructively amended when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an

offense differing from the offense the indictment returned by the grand jury actually charged." *United States v. Vosburgh*, 602 F.3d 512, 532 (3d Cir. 2010) (quoting *United States v. Daraio*, 445 F.3d 253, 259 (3rd Cir. 2006)). Because the Government maintained that the statements occurred as alleged in the indictment, it did not constructively amend the indictment. "A variance occurs 'where the charging terms of the indictment are not changed but when the evidence at the trial proves facts materially different from those alleged in the indictment.'" *Id.* (quoting *Daraio*, 445 F.3d at 259). A variance occurred here if the fact that the statements referred to "capital" rather than "new capital" is a materially different fact. But even if such a variance occurred, if Defendants were sufficiently informed of the charges in a manner that allowed them to prepare a defense without being misled or surprised, then the variance did not prejudice Defendants' substantial rights. *Id.* Because Defendants were sufficiently on notice of the statements at issue and the elements of the offenses charged were not altered, even if the addition of the adjective was material, there was no prejudice here. *United States v. Andrews*, 681 F.3d 509, 529 (3d Cir. 2012) Therefore, although the evidence revealed that the statements did not include the adjective "new" as was alleged, the variance between the allegation in the indictment and the proof did not prejudice Defendants.

ii.   *Second Element: The Statement or Representation was False*

Both Defendants argue that the Government failed to prove that the statements were objectively false. Defendants argue that there is room for disagreement as to whether the statements count as capital and therefore the statements are not objectively false. (Hartline's Acq. Supp. at 6-7; Bekkedam's Acq. Supp. at 21-22.) Defendant Hartline argues that the Government's use of the terms "new money," "new capital," and "new cash" to explain why the investments were not capital is not based on any objective legal term, regulation, or accounting guidance. There is no legal requirement that the Government prove statements objectively false by demonstrating the statement was specifically contrary to a defined legal term, regulation, or accounting guidance. Although it would certainly be far more simple if falsity could be so black and white, this is plainly not the case. Instead, the jury considers the statements and context of the statements to decide if the statement was false. Here, the statements were made in response to a request that NOVA Bank raise capital to better secure the Bank as a contingency for the Government providing TARP funds. Based on the evidence presented regarding capital and whether capital that comes from a loan made by the bank to a third person and then invested as

capital in the holding company truly improves security, the jury could find that Defendant Hartline's statements were false in the context in which they were made even without a specific dictionary definition to prove it.

Defendant Hartline then argues that the statements were the "literal truth" in that money indeed was invested by Levin, Bonomo, and Gallub into NOVA Financial, regardless of the source of funds used.  The false statements, however, are not simply that "money was invested," which could be literally true. The statements were that $5 million in capital was raised and then that "NOVA has met the contingency requirement by raising over $10.0 million of capital." The issue of falsity is not whether money was invested, but whether it was false to represent that money as "capital." As addressed above, based on the context presented to the jury, it is possible for a reasonable juror to find beyond a reasonable doubt that the statements regarding capital were false. Therefore, Defendants cannot be acquitted on Counts III and IV on such grounds.

  iii.  *Third Element: The False Statement was Made Knowingly and Willfully*

To prove the third element, the Government must prove that the defendant had knowledge of the facts that constitute the offense and acted with knowledge that his conduct was in some general sense unlawful. *United States v. Starnes*, 583 F.3d 196, 209-10 (3d Cir. 2009). Defendant Hartline argues that he lacked knowledge of the facts and did not know that his conduct was unlawful. Specifically, Defendant Hartline argues that he had no reason to question the financial statements on which he relied at the time that the statements were made and therefore he did not deliberately make false statements. Defendant Hartline further argues that he had no knowledge of the accounting guidance, EITF 85-1, until May of 2010. As Defendant Hartline has done repeatedly, he focuses on the technicalities at the expense of the greater context of the evidence. The real question is, in the context of being directed by the Government to raise capital to improve the stability of the bank to receive TARP funds, whether Defendant Hartline knew that the representation that the capital had been raised was false based on the facts available to him. The facts available to Defendant Hartline include the knowledge that the investments in NOVA Financial from Levin, Bonomo, and Gallub, were funded by loans extended by NOVA Bank. Defendant Hartline cannot argue that he innocently relied on the financial statements when he was aware of a far greater realm of facts. Similarly, Defendant Hartline was aware of why the Government wanted NOVA to raise capital and whether raising capital through loans made by the holding company's bank would truly achieve the

Government's contingency. Therefore, even without specific knowledge of EITF 85-1, Defendant Hartline was aware of facts that demonstrate the falsity of his statements regarding capital, which were made deliberately.

>    iv.    *Fourth Element: The Statement or Misrepresentation was Material*

Defendants again argue that there was insufficient proof as to the materiality of the statements. The Court addressed the issue in regards to the first element of Count II and the law governing materiality is unchanged here.

>    v.    *Fifth Element: The Statement or Misrepresentation was Made in a Matter within the Jurisdiction of the Federal Government*

Finally, Defendant Bekkedam contests agency jurisdiction based on the fact that the statements were communicated to the FDIC which then relayed the statements to Treasury. However, "it is well settled that a false statement or representation may pertain to a matter 'within the jurisdiction' of the executive branch for purposes of § 1001(a) even if it was not made to an agency (or other component) of the executive branch." *United States v. Starnes*, 583 F.3d 196, 208 (3d Cir. 2009) (internal citations omitted). "[I]t is enough that the statement or representation pertain to a matter in which the executive branch has 'the power to exercise authority.'" *Id.* (internal citations omitted). Therefore this argument is without merit.

## IV.   Legal Standard as to New Trial

Federal Rule of Criminal Procedure 33 permits the court to "vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33. "A new trial should be ordered only when substantial prejudice has occurred," and the interest of justice so requires. *United States v. Georgiou*, 777 F.3d 125, 143 (3d Cir. 2015) (quoting *United States v. Armocida*, 515 F.2d 29, 49 (3d Cir. 1975)), *cert. denied*, 136 S. Ct. 401 (2015). To grant a new trial based on allegedly improper statements or conduct, the Court must determine that it is 'reasonably probable' that the verdict was influenced by the resulting prejudice. *Id.* To order a new trial on the ground that the jury's verdict is contrary to the weight of evidence, the Court must determine "that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)), *cert. denied*, 135 S. Ct.

2309, 191 L. Ed. 2d 977 (2015). "Thus, '[m]otions for a new trial based on the weight of the evidence are not favored. Such motions are to be granted sparingly and only in exceptional cases.'" *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (quoting *Gov't of V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)). "When evaluating a Rule 33 motion, the district court 'does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case.'" *Salahuddin*, 765 F.3d at 346 (quoting *Johnson*, 302 F.3d at 150).

## V.   Discussion as to Motions for a New Trial

Defendants Hartline and Bekkedam filed separate motions requesting new trials on a variety of grounds. In light of the Court's review of the evidence in support of each element of each count, the Court does not believe the verdict was against the weight of the evidence such that there is a serious danger that an innocent person was convicted. *Salahuddin*, 765 F.3d at 346 (quoting *Johnson*, 302 F.3d at 150). Therefore, the Court will not re-address the sufficiency of the evidence arguments.  To the extent the motions request new trials on other grounds, the Court will address those arguments now.

### A.   The Alleged Improper Arguments Made by the Government Did Not Prejudice the Jury
#### i.   *Mr. Hartline's Salary*

Defendant Hartline moved for a mistrial on the basis of the Government disclosing Mr. Hartline's salary, which this Court has specifically excluded. The Court agrees that the Government violated this Court's ruling by raising the issue of Mr. Hartline's salary in its closing argument. The Court, however, does not agree that it was reasonably probable that the resulting verdict was prejudiced by that argument. *Georgiou*, 777 F.3d at 143. The Court excluded evidence of Mr. Hartline's salary on the basis that it was irrelevant. (Tr. 206:19-21.) The figure itself was certainly irrelevant; however, it was not so incredibly prejudicial as to make it reasonably probable that the verdict was prejudiced by the single reference to Mr. Hartline's salary. Defendant Hartline argues that the use of the salary prejudiced him by adding to the Government's theory that he acted to save his salary, but the Government's disclosure of Mr. Hartline's salary was not revealed in this context and the Government was cutoff immediately after the figure was spoken. Therefore, Defendant Hartline can only offer a hypothetical theory

as to how the jury may have received the information because the circumstances do not establish with reasonable probability that the verdict was prejudiced. As a result, a new trial is not warranted on these grounds.

  *ii.* *Misstating Evidence*

Both Defendants argue that the Government repeatedly misstated evidence so as to confuse and mislead the jury. (Hartline New Trial at 20-32; Bekkedam New Trial at 5-21.) To the extent that Defendants failed to object to the Government's alleged misstatements, this argument is waived. To the extent the Defendants objected, but those objections were overruled, the Court affirms the rulings for the reasons reflected in the record.

  B. <u>There Was Not a Constructive Amendment of or Variance from the Indictment</u>

Defendant Hartline argues that the Government improperly implied the existence of applicable laws and regulations requiring disclosure of the source of capital such that Government constructively amended the indictment to include an omission rather than misstatement theory. "An indictment is constructively amended when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged." *United States v. Vosburgh*, 602 F.3d 512, 532 (3d Cir. 2010) (quoting *United States v. Daraio*, 445 F.3d 253, 259 (3rd Cir. 2006)). "A variance occurs 'where the charging terms of the indictment are not changed but when the evidence at the trial proves facts materially different from those alleged in the indictment.'" *Id.* (quoting *Daraio*, 445 F.3d at 259).

The government argues that an overall reading of the indictment demonstrates that the use of the term "capital" was deceitful and that concealing the true nature of the alleged capital was fraudulent. For example, the Indictment alleges that the circular nature of the transactions were "kept secret," (In. ¶ 17), and that Defendants "fraudulently made it appear. . .," (In. ¶ 28). The evidence and jury instructions did not differ from what was alleged in the indictment such that there was a different factual scenario. Whether the use of the word "capital" itself was a

misstatement, half-truth, or deceitful without further explanation,[7] the factual circumstances remain unchanged from the indictment. Essentially, the parties disagree as to how to label the use of the term "capital," but that does not demonstrate a deviation from the facts as alleged in the indictment.  Therefore, the Court does not find that there was a constructive amendment or impermissible variance from the facts as alleged in the Indictment.

    C.  <u>There Were No Errors in the Jury Instructions that Require A New Trial</u>

      i.   *Not Providing the Jury with a Copy of the Indictment*

Defendants now argue that the Court erred by not providing the jury with the Indictment. Defendants did *not* request the jury be provided with a copy of the Indictment at trial. All parties agreed that the jury would be provided with a redacted copy of the Indictment, to cure any errors, if a copy of the Indictment was requested. Defendant Hartline now argues that, "the jury's failure to review the Indictment must be held against the Government as it admitted significant errors in the Indictment but refused to agree to potentially curative redactions." (Hartline's New Trial at 40.) But Defendant Hartline also admits that "counsel resolved to only prepare and send back the overt acts and accompanying instructions if the jury requested the Indictment or a list of overt acts." (Hartline's New Trial at 42.) Defendant Bekkedam, who also agreed not to send the jury the Indictment, now also argues that he is entitled to a new trial on these grounds. (Bekkedam New Trial at 44.) Both Defendants argue that it is impossible for the jury to have agreed on an overt act in the Indictment when they did not receive the list of overt acts in the Indictment. The Government responds that there is no plain error because the jury could agree on an overt act even without the list from the Indictment, since the agreed upon overt act need not necessarily be included in the Indictment. (Govt. Resp. at 43.)

"It is well settled that the government can prove overt acts not listed in the indictment, so long as there is no prejudice to the defendants thereby." *United States v. Schurr*, 794 F.2d 903, 909 (3d Cir. 1986) (citing *United States v. Adamo*, 534 F.2d 31, 38-39 (3d Cir. 1976), *cert. denied*, 429 U.S. 841 (1976)). As a result, the jury need not necessarily agree on one of the overt acts listed in the Indictment. *Adamo*, 524 F.2d at 38. At most, if the substitution of proof of an

---

[7] Fraudulent representations "may be effected by deceitful statements of half-truths." *United States v. Olatunji*, 872 F.2d 1161, 1166 (3d Cir. 1989); *see also United States v. Basroon*, 38 F. App'x 772, 779 (3d Cir. 2002) ("a duty to disclose may be raised by partial statements if the speaker tells a half-truth or if the omission qualifies as a concealment").

unalleged for an alleged overt act justifies a request for continuance because of surprise. *Id.* (adopting the rule announced in *United States v. Negro*, 164 F.2d 168 (2d Cir. 1947), and reaffirmed in *United States v. Armone*, 363 F.2d 385, 400 (2d Cir.), *cert. denied*, 385 U.S. 957 (1966)). Here, Defendants agreed not to send the list of overt acts to the jury unless requested. To now argue that there was prejudice as a result of this agreement is unavailing. Therefore, the Court will not order a new trial on such grounds.

### ii. *Denying a "Theory of the Defense" Instruction*

Defendant Bekkedam argues that he is entitled to a new trial because the Court was obligated to give his requested "theory of the defense" instruction. (Bekkedam New Trial at 27.) "A defendant is entitled to a theory of defense instruction if (1) he proposes a correct statement of the law; (2) his theory is supported by the evidence; (3) the theory of defense is not part of the charge; and (4) the failure to include an instruction of the defendant's theory would deny him a fair trial." *United States v. Hoffecker*, 530 F.3d 137, 176 (3d Cir. 2008). But a defendant is "not entitled to a judicial narrative of his version of the facts, even [if] such a narrative is, in one sense of the phrase, a 'theory of defense.'" *Id.* The most serious issue with Defendants' "theory of the defense" was that it provided a narrative as to Defendants' honest and genuine belief that the funds were capital even though there was no evidence as to the Defendants' personally-held beliefs. Because the instruction would supply an explanation as to Defendants' beliefs, which was not presented through the evidence at trial, it was not necessary to include the instruction in order to ensure a fair trial. Indeed, Defendant Bekkedam does not cite to any evidence that would have supported the theory as required. Therefore, the Court does not find that the decision to exclude the instruction was in error and will not order a new trial on such grounds.

### iii. *Not Instructing the Jury on the Specific Statements as to Counts Three and Four*

Defendant Bekkedam argues that his due process rights were violated by the failure to give an instruction as to the specific statements and dates that formed the bases of Counts Three and Four. (Bekkedam New Trial at 70-73.) As to the dates, that information was included on the agreed upon Verdict Sheet, (Dkt No. 202), which was given to the jury. As to the specific statements, Defendant Bekkedam never raised any objection to this issue at trial nor did he propose an alternate instruction to include the statements. In any event, the Government had made clear in its closing argument the specific statements that formed the basis of each count.

[Tr. 2605-06 (4/19, 20:15-21:5); Tr. 2625-26 (4/19, 40:24-41:8).] As a result, in light of the circumstances and Defendant Bekkedam's failure to object, not including the specific statements in the instructions did not constitute plain error.

Defendant Bekkedam then argues that the failure to include the specific statements resulted in multiplicative convictions for Counts Three and Four because then the Counts looked exactly like the same counts contained in Counts One and Two. (Bekkedam New Trial at 74.) This argument ignores the detailed instructions the Court gave as to each element of each offense. Because Counts One and Two involved violations of statutes entirely different from the statute at issue in Counts Three and Four, the instructions were radically different in a manner that renders Defendant Bekkedam's argument mere speculation. As a result, the Court will not grant a new trial on such grounds.

## VI.   CONCLUSION

Based on the foregoing analysis, and in light of the evidence presented at trial, the Court denies Defendant Hartline's Motion for Judgment of Acquittal, Defendant Bekkedam's Motion for Judgment of Acquittal, Defendant Hartline's Motion for New Trial, and Defendant Bekkedam's Motion for New Trial.

An appropriate order follows.

**BY THE COURT:**

**/s/ C. Darnell Jones, II**
**C. DARNELL JONES, II   J.**